U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
JUL 17 2013
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

ALMA RODRIGUEZ and
GRICELDA SEEDERS                                                PLAINTIFFS

V.                              CASE NO.: 13-5147

KEVIN R. NAIL and
FENCE BROKERS, INC.                                             DEFENDANTS

## COMPLAINT

COMES NOW the Separate Plaintiffs, Alma Rodriguez and Gridelda Seeders, by and through their attorneys, Taylor King & Associates, P.A., and for their causes of action against Defendants herein allege as follows:

## PARTIES

1.  Alma Rodriguez is a resident of the State of Arkansas, residing at 48 North Wright Street, Siloam Springs, Arkansas 72761.

2.  Gricelda Seeders is a resident of the State of Arkansas, residing at 57 South Pine Street, Van, Texas 75790.

3.  Defendant, Fence Brokers, Inc.. Is a for profit corporation licensed to and doing business in the State of Arkansas, and with its principal place of business being 25736 Interstate 30, Bryant, Arkansas 72022. Fence Brokers, Inc. is a fencing company and is the owner and/or lessee of a commercial tractor-trailer which was involved in the collision that occurred on October 24, 2011 in Washington County, Arkansas. Fence Brokers, Inc., employed Defendant, Kevin Nail, who was operating the aforementioned tractor-trailer at the time of the collision described herein. Fence Brokers, Inc. may be served through its registered agent, Charles R. Walker, 25736

Interstate 30, Bryant, Arkansas 72022.

4. At the time of the collision, Defendant, Kevin Nail was a resident of the State of Arkansas. On October 24, 2011, Mr. Nail was operating the commercial tractor-trailer owned and/or leased by Defendant, Fence Brokers, Inc.. The last known address from Kevin Nail is 15 Toler Road, Sheridan, Arkansas 72150.

## JURISDICTION

5. Separate Plaintiffs incorporate all of the allegations contained in Paragraphs 1-4.

6. The negligent acts complained of in this Complaint occurred in Washington County, Arkansas.

7. This Court has jurisdiction over the parties and the subject matter, and venue is appropriate in this Court.

## FACTS

8. Separate Plaintiffs incorporate all of the allegations contained in Paragraphs 1 -7.

9. On October 24, 2011, Alma Rodriguez and Gricelda Seeders, were passengers in a 2002 Dodge Ram owned and driven by Ignacio Marquez.

10. At approximately 6:39 a.m., Plaintiffs were passengers in a vehicle driven by Ignacio Marquez. Plaintiffs were eastbound at the intersection of 48th Street and Sunset waiting to turn south onto Interstate 540. Defendant, Kevin Nail was traveling westbound on Sunset when the drivers side axle came off the trailer and collided with the vehicle in which Plaintiffs were traveling. .

11. The weather at the time of the collision was clear, dry and dark.

12. As a result of the collision, Plaintiffs, Alma Rodriguez and Gricelda Seeders suffered physical injuries throughout their bodies.

## COUNT I

### NEGLIGENCE OF DEFENDANT, KEVIN NAIL, NEGLIGENCE PER SE OF DEFENDANT, KEVIN NAIL, AND VICARIOUS LIABILITY OF DEFENDANT FENCE BROKERS, INC.

13. Plaintiffs incorporate all of the allegations contained in Paragraphs 1-12.

14. Defendant, Kevin Nail was at all times relevant to this action an employee of Defendant. Fence Brokers, Inc. and was acting within the course and scope of his job duties. Defendant, Kevin Nail had been issued a Commercial Driver's License from the State of Arkansas.

15. Defendant, Kevin Nail was at all times relevant to this action operating a tractor and trailer owned and/or leased by Fence Brokers, Inc..

16. Defendant, Kevin Nail failed to use the ordinary and reasonable care required under the circumstances. The separate and independent negligent conduct consisted of, but is not limited to, the following acts and omissions:

(a) Failing to insure that the tractor-trailer was in safe operating condition prior to driving;

(b) Failing to insure that the cargo in the tractor-trailer was properly loaded, distributed and adequately secured;

(c) Operating a tractor-trailer at a speed greater than what was reasonable and prudent under the circumstances and given the traffic conditions;

(d) Failing to keep a careful lookout;

(e) Failing to keep the tractor-trailer under control; and

(f) Failing to sound a horn, failure to use emergency flashers or give warning at any time prior to or during the crash sequence; and

17.  A reasonably careful person, operating a commercial motor vehicle under similar circumstances, would foresee that the failures in duties of care listed above would result in devastating injuries to other persons traveling on public highways like the Plaintiffs.

18.  All of the injuries and damages complained of herein were foreseeable and proximately resulted from the negligence of Defendant, Kevin Nail.

19.  The above alleged negligent acts were not in compliance with the training that Defendant, Kevin Nail should have received in order to obtain his Commercial Driver's License from the State of Arkansas, including the CDL Manual.

20.  At the time of the collision described above, Defendant, Kevin Nail had a duty to follow the common law rules of the road and violated certain of those rules of the road, including but not limited to:

(a)  In failing to keep a lookout for other vehicles on the highway, which a reasonably careful driver would keep under similar circumstances;

(b)  In failing to inspect the tractor-trailer he was assigned to insure it was in safe driving condition prior to operation;

(c)  In failing to inspect cargo to insure it was properly loaded, distributed and adequately secured;

(d)  In failing to keep each of the tractor-trailers under the same level and degree of control maintained by a reasonably careful driver under similar circumstances;

(e)  In circumstances as described above, when the driver sees danger, when danger would be reasonably apparent to the driver who is keeping a proper lookout, or when the driver is warned of approaching imminent danger, in failing to use ordinary care to have the tractor-trailer under such control as to be able to check its speed or stop it, if necessary, to avoid damage to themselves or others;

(f)  In failing to drive a tractor-trailer at a speed no greater than was

       reasonable and prudent under the circumstances, having due regard for any actual or potential hazards; and

(g)     In failing to use ordinary care to operate a tractor-trailer in recognition of the superior right of vehicles in an oncoming lane on the highway;

21.     The failure to meet the standard of conduct required by the aforementioned common law rules of the road was negligent.

22.     All of the injuries and damages complained of herein, proximately resulted from the negligent failures of Defendant, Kevin Nail to follow the rules of the road.

23.     The Federal Motor Carrier Safety Regulations, 49 C.F.R. parts 382 *et seq.* (hereinafter, "FMCSR"), is mandatory law for all motor carriers operating in interstate commerce. The purpose of the FMCSR is to ensure that all motor carriers maintain adequate basic safety management controls in their operations, including the duty of the motor carrier to require observance by its employees of any duty or prohibition prescribed by the FMCSR.

24.     At all relevant time periods, Defendant, Fence Brokers, Inc. was a "motor carrier" and an "employer" of drivers of "commercial motor vehicles" as defined by 49 C.F.R. parts 382 *et seq.* of the Federal Motor Carrier Safety Regulations (hereinafter, "FMCSR"). Defendant, Fence Brokers, Inc. was subject to the mandatory requirements and prohibitions set out therein, including duties imposed to ensure that their commercial motor vehicle drivers acted in compliance with these federal regulations.

25.     Observance of duties placed on motor carriers by the FMCSR includes a mandate that an employer train and supervise its employees to ensure that the drivers operate commercial motor vehicles in a safe manner and only at times that the driver's ability or alertness is not impaired through fatigue, illness, or any other cause.

26.   Pursuant to sections 390.03(e)(1), 390.11 every employer of a commercial vehicle driver shall be knowledgeable of and comply with all regulations applicable to that motor carrier's operations and it shall be the duty of the motor carrier to require observance of any duty prescribed for a driver or any prohibition imposed upon the driver.

27.   Pursuant to section 392.1 every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the FMCSR.

28. At all relevant time periods, Defendant, Kevin Nail was a driver or operator of "commercial motor vehicles" as defined by 49 C.F.R. parts 382 *et seq.* of the FMCSR. The federal regulations imposed certain mandatory duties and prohibitions upon Defendant, Kevin Nail to ensure that in driving commercial motor vehicles he conducted himself in manner that protected public health, safety and welfare.

Defendant Nail violated the FMCSR, including but not limited to:

(a)   Violation of § 392.2 in failing to operate a commercial motor vehicle in accordance with the laws, ordinances, and regulations of the State of Arkansas;

(b)   Violation of § 392.3 mandating that no driver shall operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate a commercial motor vehicle;

©   Violation of § 392.7 requiring that no commercial motor vehicle shall be driven unless the driver is satisfied that certain parts and accessories are in good working order, including brakes, steering mechanism, tires, and coupling devices; nor shall any driver fail to use or make use of such parts and accessories when and as needed;

(d) Violation of § 392.9(a) prohibiting a driver from operating a commercial motor vehicle unless the commercial motor vehicle's cargo is properly distributed and adequately secured;

(e) Violation of § 392.14 requiring extreme caution and reduced speed when hazardous conditions exist;

(f) Violation of § 396.7 mandating that a motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.

(g) Violation of § 396.11 requiring every motor carrier to require its drivers to report in writing at the completion of each day's work on each vehicle operated, covering certain parts and accessories, including brakes, steering, tires, wheels and rims, emergency equipment and coupling devices; and

(h) Violation of § 396.13 mandating before driving a motor vehicle that a driver shall be satisfied that the motor vehicle is in safe operating condition;

29. The Federal Motor Carrier Safety Regulations, including those sections cited above, are adopted and enforced by the State of Arkansas as standards and law of this State, pursuant to the Arkansas Uniform Commercial Driver License Act, Arkansas Code sections 27-23-101 *et seq.*, and the Arkansas State Highway Commission Regulations, Minute Order Revisions, Commercial Motor Carriers, Rule 17.1.

30. Defendant, Kevin Nail also violated laws and regulations enacted in the State of Arkansas governing the operation of motor vehicles on the roads and highways of this state, including but not limited to:

(a) Violation of Arkansas Code section 27-51-104(a) providing it is unlawful for any person to drive or operate any vehicle in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, vehicular or otherwise, or in such a manner as to evidence a failure to maintain proper control on the public thoroughfares in the State of Arkansas;

(b) Violation of Arkansas Code section 27-51-104(b) providing it shall be unlawful for any person to operate or drive any vehicle on the public thoroughfares or private property in the State of Arkansas in violation of the following prohibited acts:

(1) To operate any vehicle in such a manner which would cause a failure to maintain control; and

(2) To operate a vehicle in any manner, when the driver is inattentive, and such inattention is not reasonable and prudent in maintaining vehicular control;

© Violation of Arkansas Code section 27-50-308 providing that any person who drives any vehicle in such a manner as to indicate a wanton disregard for the safety of persons or property is guilty of reckless driving.

31. Prior to and/or at the time of the October 24, 2011 collision, Defendant, Kevin Nail violated each of the above-cited safety laws and regulations, which violations are negligence per se.

32. The Defendant's violations of the above-cited statutes and regulations were a direct and proximate cause of the injuries and damages alleged herein.

33. The personal injuries incurred by the Separate Plaintiffs are the type of injuries the above-cited safety laws and regulations were designed to prevent.

33. Prior to and at the time of the October 24, 2011 collision, when Defendant Nail was operating the tractor-trailer and caused the wreck, he knew, or in the exercise of ordinary care should have known in light of the surrounding circumstances, that the above-described conduct would naturally and probably result in injury to others, yet he continued the conduct in reckless disregard of the consequences.

34. On October 24, 2011, and at all times relevant to this action, Defendant, Kevin Nail was acting within the course and scope of his employment for Defendant, Fence Brokers, Inc., while driving a tractor-trailer owned or leased to Fence Brokers,

Inc. Fence Brokers, Inc.had the authority, right and duty to control how Defendant, Kevin Nail performed his job. Defendant, Fence Brokers, Inc. is vicariously liable for the compensatory damages sought by the Separate Plaintiffs for the negligence of Defendant Nail.

35. On October 24, 2011, and at all times relevant to this action, Defendant, Kevin Nail was driving a tractor-trailer owned or leased by Fence Brokers, Inc. Defendant, Fence Brokers, Inc. is vicariously liable for the compensatory damages sought by the Separate Plaintiffs for the negligence of Defendant Nail.

36. As a direct and proximate result of Defendant Nail's acts and omissions, while acting within the scope of his employment for Defendant, Fence Brokers Inc., and driving a tractor-trailer owned and/or leased by Fence Broker Inc., the Separate Plaintiffs assert claims for all compensatory against the Defendants, including, but not limited to, the physical injuries described herein, pain and suffering, mental anguish, loss of consortium, medical expenses, care taking and custodial care, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the jury, plus the costs of this litigation, and all of the relief to which the Separate Plaintiffs are entitled to by law, all in an amount in excess of that necessary for federal diversity jurisdiction.

## COUNT II

### DIRECT NEGLIGENCE AND NEGLIGENCE PER SE OF FENCE BROKERS, INC.

37. Separate Plaintiffs incorporate all of the allegations contained in Paragraphs 1 - 36.

38. In addition to vicarious liability for the negligent conduct, injuries and

9

damages caused by Kevin Nail, Defendants, Fence Brokers, Inc. also are directly and independently liable for injuries and damages proximately caused by their own negligent acts and omissions.

39. Defendant, Kevin Nail was operating a tractor-trailer owed or leased by Fence Brokers, Inc.. Fence Brokers, Inc. had a duty to inspect, repair, maintain and supply a tractor and trailer without the frame or chassis of each commercial motor cracked, loose, sagging or broken, and with the brakes, steering, tires, couplings and other mechanisms for safe operation in good repair.

40. Fence Brokers, Inc., were fully responsible for the inspection, maintenance and operation of the tractor-trailer, which was in a state of repair that contributed to the collision.

41. Defendant, Fence Brokers, Inc. failed to properly repair and maintain the tractor-trailer to assure its safe operation.

42. Defendant, Fence Broker, Inc. failed to properly inspect the tractor-trailer prior to each trip to assure its safe operation.

43. Defendant, Fence Brokers, Inc., by and through their officers, servants, employees and/or agents, whether actual or ostensible, breached duties of care and committed the following acts of negligence and carelessness by failing to meet the requisite standards of due care, skill and practice as required of commercial and freight delivery trucking companies and/or the owners and lessor/lessee of tractor-trailers.

44. Defendant, Fence Brokers, Inc. was negligent in hiring, training, retaining and supervising its employees, including Defendant, Kevin Nail, to wit:

(a) Defendant, Fence Brokers, Inc. knew or should have known that

        Defendant, Kevin Nail was not competent, satisfactory or safety-conscious to operate the tractor-trailer he was employed to drive;

(b)    Defendant, Fence Brokers, Inc. misjudged and/or overestimated the skills and ability of Defendant Nail to drive its vehicles;

©    Defendant, Fence Brokers, Inc. failed to train educate, direct, prepare, set policy, or give guidance to its employees such as Defendant Nail in the use of its vehicles, particularly in the areas of safety and driver logs; and

(d)    Without the aforementioned training, education, direction, preparation, policies and/or guidance provided to its employees, Defendant, Fence Brokers, Inc., knew or should have known, its employees such as Defendant Nail were not qualified or competent to operate commercial motor vehicles or tractor-trailers.

45.    The negligence of Defendant, Fence Brokers, Inc. in hiring, training, retaining and supervising Defendant Nail was a proximate cause of the injuries and damages alleged herein.

46.    A reasonably careful motor carrier, operating under similar circumstances, would foresee that the failures in duties of care listed above would result in devastating injuries to other persons traveling on public highways like the Separate Plaintiffs.

47.    At all relevant time periods, Defendant, Fence Brokers, Inc. was a "motor carrier" and an "employer" of drivers of "commercial motor vehicles" as defined by 49 C.F.R. parts 382 *et seq.* of the Federal Motor Carrier Safety Regulations (hereinafter, "FMCSR"). Defendant, Fence Brokers, Inc. was subject to the mandatory requirements and prohibitions set out therein.

48.    Pursuant to section 390.13 of the Federal Motor Carrier Safety Regulations, no person shall aid, abet, encourage, or require an employee of a motor carrier to violate the FMCSR.

49.    Defendant, Fence Brokers, Inc. violated provisions of the Federal Motor

Carrier Safety Regulations, including but not limited to:

(a) Violation of § 383.111 in failing to train its drivers in procedures for safe vehicle control, the importance of understanding the effects of speed control for traffic conditions, traffic flow, stopping distance, and visibility, the importance of proper visual search and proper visual search methods, the procedures and techniques for controlling the space around the vehicle, and basic information concerning when and how to make emergency maneuvers including evasive steering and emergency stop;

(b) Violation of § 391.11 and § 391.15(a) requiring a motor carrier not to permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle;

(c) Violation of § 392.2 providing that every commercial motor vehicle operating in this state must be operated in accordance with the laws, ordinances, and regulations of the State of Arkansas;

(d) Violation of § 392.3 mandating in relevant part that a commercial motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate a commercial motor vehicle;

(e) Violation of § 392.6 prohibiting a motor carrier from scheduling a run or permitting or requiring the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated;

(f) Violation of § 396.7 mandating that a motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle;

(g) Violation of § 393.201 requiring that the frame or chassis of each commercial motor vehicle shall not be cracked, loose, sagging or broken;

(h) Violation of § 396.3 requiring a motor carriers to systematically inspect, repair and maintain vehicles subject to its control;

(I) Violation of § 396.11(c) requiring, prior to requiring or permitting a driver to operate a vehicle, every motor carrier or its agent shall repair any defect

    or deficiency listed on the driver vehicle inspection report which would be likely to affect the safety of operation of the vehicle; and

(j)  Violation of § 396.13 mandating before driving a motor vehicle that a driver shall be satisfied that the motor vehicle is in safe operating condition.

50.  The Federal Motor Carrier Safety Regulations, including those sections cited above, are adopted and enforced by the State of Arkansas as standards and law of this State, pursuant to the Arkansas Uniform Commercial Driver License Act, Arkansas Code sections 27-23-101 *et seq.*, and the Arkansas State Highway Commission Regulations, Minute Order Revisions, Commercial Motor Carriers, Rule 17.1.

51.  Defendant, Fence Brokers, Inc. violations of the above-cited statutes and regulations were a direct and proximate cause of the injuries and damages alleged herein.

52.  The injuries inflicted on the members of the Separate Plaintiffs are the type of injuries the above-cited safety law and regulations were designed to prevent.

53.  Defendant, Fence Brokers, Inc. entrusted the tractor-trailer owned and/or leased to Defendant, Kevin Nail, who they knew, or should have known, had exhibited a pattern of and/or proclivities for negligent and reckless driving, and was without the proper training, experience and ability to safely operate a commercial tractor-trailer rig, in a manner that created a foreseeable, appreciable and unreasonable risk of harm to third-parties, namely persons traveling on public roads and highways, like the Separate Plaintiffs.

54.  All of the injuries and damages complained of herein were foreseeable

and proximately resulted from the negligence of Defendants, Fence Brokers, Inc. and Kevin Nail.

55. As a direct and proximate result of the negligent acts and omissions of Defendant, Fence Brokers, Inc., the Separate Plaintiffs assert claims for all compensatory damages, including, but not limited to, the physical injuries described herein, pain and suffering, mental anguish, loss of consortium, medical expenses, care taking and custodial care, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the jury, plus the costs of this litigation, and all of the relief to which the Separate Plaintiffs are entitled to by law, all in an amount in excess of that necessary for federal diversity jurisdiction.

## DEMAND FOR JURY TRIAL

56. Separate Plaintiffs demand that all issues of fact in this case be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Separate Plaintiffs pray for judgment against Defendants as follows:

1. For damages in an amount adequate to compensate the Separate Plaintiffs for the injuries and damages sustained and described herein.

2. For all general and special damages caused by the alleged conduct of Defendants.

3. For the costs of litigating this case.

4. For all other relief to which Separate Plaintiffs are entitled by law.

Respectfully Submitted,

BY: _____
Alan J. Levar, Esq.
Taylor King & Associates
320 Main Street
P.O. Box 972
Arkadelphia, AR  71923
(501) 246-0505